

**NUMBER 13-10-579-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

| | |
|---|---|
| **JOSE ANGEL BANDA,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 197th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Vela, and Perkes
### Memorandum Opinion by Justice Vela

A jury convicted appellant, Jose Angel Banda, of the first-degree felony offense of aggravated assault with a deadly weapon in retaliation against a person who had reported the occurrence of a crime. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(2)(C) (West Supp. 2010). The trial court assessed punishment at thirty-five years' imprisonment. In five issues, appellant asserts: (1) the evidence is insufficient to support his conviction; (2) the trial court abused its discretion by failing to grant a mistrial;

(3) the prosecutor made improper remarks during closing argument; (4) the trial court erred by failing to include a lesser-included-offense instruction; and (5) the trial court erred by failing to charge the jury on self defense. We affirm.

## I. FACTUAL BACKGROUND

On May 31, 2009, Bill Nored lived in a trailer park in Brownsville. That day, appellant, whose trailer was "right across" from Nored's trailer, said he was "having problems" with his girlfriend. Later, Nored heard fighting and a woman whimpering, coming from inside appellant's trailer. He went to appellant's trailer and told him that if he did not stop "beating up on her," he was going to call the police. Appellant dared him to make the call, and Nored testified appellant watched him call the police.

When the police arrived, they handcuffed appellant, escorted his girlfriend from the trailer, and then released him. Shortly after the police left, appellant, who was at his trailer, called Nored some names and told him to step over to his yard. Nored refused, and after appellant entered into his trailer, Nored went to visit a neighbor, Jimmy Adams. Nored testified that while he was in Adams's yard, appellant "ran up with the sickle weapon." When the prosecutor asked Nored, "[W]hat, if anything, did he do when he had that sickle in his hand?," he said:

> [H]e ran up and I tried to dissuade him from fighting because I had an extension bar, because I knew he was going to attack me, but I was in the other guy's yard. And he ran up into the yard with a sickle and said he was going to teach me a lesson.

When the prosecutor asked Nored, "[Y]ou are saying the defendant then comes with this sickle in his hand, what, if anything, is he saying?", Nored said, "Some profanities and then he's going to teach me a lesson. He has a weapon that can take my life . . . ."

2

Nored told appellant that if he came any closer he was going to hit him with the extension pole.[1] When Nored was asked if appellant was swinging the sickle at him, he said, "[H]e's got it raised as he's making his charge. So I hit him with the extension pole when he was coming up close to me with that . . . ." Nored stated that when he hit appellant with the pole, appellant was still trying to use the sickle on him. Nored and appellant "wrestled around" for three or four minutes until Nored took the sickle "away from him after he cut some parts of my arm with it." Nored threw the sickle away and then let appellant go. Appellant picked it up and went back to his trailer. The sickle was never recovered.

On cross-examination, when defense counsel asked Nored if he had struck appellant on the head with "a metal pole," he said, "I did, after he attacked me with a sickle." He stated that "I had gone two trailers over to his [Jimmy Adams's] house. That's when he [appellant] came running over . . . wielding the sickle in his hand in the yard of Jimmy Adams." Nored testified he grabbed the blade of the sickle "because I didn't want him cutting my throat, cutting my hand off, so I took it away from him." When defense counsel asked him, "In your statement [to the police] do you state that you struck him [appellant] on the head?", he said, "[A]t first on the side when he attacked me at first. . . . I thought I hit his head with the extension [pole] to try to get him to let go of the sickle." Nored stated he did not harm appellant after he took the sickle from him.

Jimmy Adams testified that at the time in question, Nored was at his (Adams's) trailer, and appellant was at his own trailer. Adams saw appellant, who was carrying a sickle in his hand, "running from his trailer . . . straight after us." He stated appellant

_____

[1] Bill Nored testified that the extension pole was made of metal and that it was used for painting.

"threatened Bill [Nored]."  When the prosecutor asked Adams, "How would he [appellant] threaten him?", he said, "He was going to kill him."  He stated that appellant "attacked" Nored and that both men got "into a little fight."  After subduing appellant, Nored threw the sickle behind Adams.  However, appellant retrieved it and went home.  When the prosecutor asked Adams, "Did you see if the defendant was swinging this sickle at Bill [Nored]?", he said, "Yes, sir, he was."  According to Adams, appellant said, "I'm going to kill you."  He testified that Nored used the extension pole to take the sickle away from appellant.

On cross-examination, when defense counsel asked Adams, "So you don't disagree that Mr. Nored had a deadly weapon [the extension pole] in his hands and was instigating a physical altercation with Mr. Banda, right?", he said, "I feel he [Nored] was just defending himself."  He said Nored arrived at his (Adams's) trailer with the extension pole.

Jorge Cruz, who also lived in the trailer park, testified that on the day in question, he called the police because he saw that appellant had a weapon.  When the prosecutor asked Cruz, "But you saw Mr. Banda coming with that sickle, that instrument, toward Mr. Nored and Mr. Jimmy Adams?", he said, "He had it in his hand and he was running."  On cross-examination, when defense counsel asked Cruz, "[Y]our testimony is that what you observed was just Mr. Banda running towards Mr. Nored with a weapon in his hand?", he said, "Yes."

Officer Jesus Olvera testified that on the date in question, he was dispatched to the trailer park.  When the prosecutor asked him, "You were dispatched in reference to what

4

type of offense?", he said, "An aggravated assault . . . ." When asked, "[W]hat made it aggravated?", he said, "The victim said he was attacked with a sickle." He said the alleged victim was Bill Nored.

Appellant did not testify at the guilt-innocence phase of his trial, and the defense did not call any witnesses on his behalf.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, appellant challenges the sufficiency of the evidence to support his conviction.

#### 1. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Consequently, we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said, quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273

5

S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *See id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). "Furthermore, '[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'" *Id.* (quoting *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992)), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002).

In this case, the indictment alleged, in relevant part, that appellant:

intentionally, knowingly, or recklessly cause[d] bodily injury to BILL NORED by wrestling with BILL NORED and/or charging towards BILL NORED, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a sickle or other unknown object to the Grand Jury, during the commission of said assault, and the defendant was then and there acting in retaliation against or on account of the service by BILL NORED as a person who had reported the occurrence of a crime . . . .

**2. Applicable Law**

**a. Assault Under Section 22.01 of the Texas Penal Code**

The Texas Legislature has defined the crime of assault in section 22.01 of the penal code. Subsection (a) of that provision sets out three separate assaultive crimes, one of which is relevant to this case: "(a) A person commits an offense if the person: (1) Intentionally, knowingly, or recklessly causes bodily injury to another . . . ." TEX.

6

PENAL CODE ANN. § 22.01(a)(1). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West Supp. 2010).

The evidence showed that after appellant charged at Nored with the sickle, they "wrestled around" for three or four minutes. Nored testified that while doing so, he "skinned up" his knees and "hurt my knee against the steps of the trailer." He also testified appellant cut his (Nored's) arm with the sickle. Thus, a rational jury could reasonably conclude that Nored suffered bodily injury by hurting his knee and receiving a cut from the sickle, which caused him physical pain. *See id.* In addition, a rational jury could reasonably conclude appellant intentionally, knowingly, or recklessly caused bodily injury to Nored by charging at him and wrestling with him.

**b. Aggravated Assault Under Section 22.02 of the Texas Penal Code**

Section 22.02 of the penal code defines the crime of aggravated assault as being an assault under section 22.01, and the person "(1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(1), (2). Thus, "the use of a deadly weapon may act as an aggravating factor for 'bodily injury' assault under Section 22.01(a)(1), . . . ." *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008).

"'Deadly weapon' means: . . . (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B). Because a sickle is not a deadly weapon per se, the State was required to prove that, in the manner of its use or intended use, the sickle used by appellant was capable of causing death or serious bodily injury. *See id.*

7

In *Bailey v. State*, 38 S.W.3d 157 (Tex. Crim. App. 2001), the court explained section 1.07(a)(17)(B) by saying:

> The statute does not say "anything that in the manner of its use or intended use causes death or serious bodily injury." Instead the statute provides that a deadly weapon is "anything that in the manner of its use or intended use *is capable of causing* death or serious bodily injury." § 1.07(a)(17)(B) (emphasis added). The provision's plain language does not require that the actor actually intended death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it could be capable of causing death or serious bodily injury. The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.

*Id.* at 158–59 (quoting *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)) (citations and footnote omitted).

In light of the holdings in *Bailey* and *McCain*, we must determine if appellant intended a use of the sickle in which it could be capable of causing death or serious bodily injury. *See id.* The evidence showed that appellant ran from his trailer to Adams's trailer, wielding a sickle. With the sickle raised in his hand, he charged at Nored. Appellant said some profanities and stated he was going to teach Nored a lesson. Even though Nored hit appellant with the extension pole, appellant was still trying to use the sickle on him, and he cut Nored's arm with it. Thus, a rational jury could have reasonably concluded appellant intended a use of the sickle in which it could be capable of causing death or serious bodily injury.

Next, we consider whether there is sufficient evidence to show the sickle was capable of causing death or serious bodily injury. Because appellant was convicted of aggravated assault by use of a deadly weapon, not by causing serious bodily injury, we

8

focus our analysis on whether the sickle was capable of causing death or serious bodily injury and not whether it caused serious bodily injury. The Texas Court of Criminal Appeals has approved several factors to be used in determining whether an object is capable of causing death or serious bodily injury: (1) physical proximity between the victim and the object, *Tisdale v. State*, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984); (2) the threats or words used by the defendant, *Williams v. State*, 575 S.W.2d 30, 32 (Tex. Crim. App. 1979); (3) the size and shape of the weapon, *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); (4) the weapon's ability to inflict death or serious bodily injury, *Id.*; and (5) the manner in which the defendant used the weapon. *Id.* No one factor is determinative, and each case must be examined on its own facts. *See Brown v. State*, 716 S.W.2d 939, 946–47 (Tex. Crim. App. 1986). Either expert testimony or lay testimony may be sufficient to support a finding. *English v. State*, 647 S.W.2d 667, 668–69 (Tex. Crim. App. 1983). Introducing the weapon in evidence helps the jury, but the jury may determine the weapon was capable of causing death or serious bodily injury even if it is not in evidence. *Id.* at 669.

The evidence showed appellant had the sickle raised in his hand when he charged at Nored. He threatened Nored with physical harm by telling him he was going to teach him a lesson. Nored testified that during the attack, his arm was cut by the sickle. He described the sickle "as a weapon that can take my life. . . ." In addition, he stated that it had a short, wooden handle and "that it didn't have a point, it was flat, but it still was designed like the old kind that we used to cut weeds or wheat with by hand, . . . ." Considering (1) the close proximity between appellant and Nored, (2) the violent manner

9

in which he attacked Nored, (3) the sickle's design, (4) Nored's testimony that the sickle cut him on the arm, and (5) Nored's testimony describing the sickle "as a weapon that can take my life," a rational jury could have reasonably concluded that appellant used a deadly weapon, because he intended to use the sickle in such a manner that it was capable of causing death or serious bodily injury to Nored.

Lastly, we address whether appellant committed the offense in retaliation against Nored because he reported the occurrence of a crime. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(2)(C). Nored testified he heard fighting and a woman whimpering inside appellant's trailer. He told appellant if he did not stop beating the women, he was going to call the police. Appellant saw Nored call the police, and when they left the scene, appellant took a sickle, charged at Nored, and told Nored he was going to teach him a lesson. Appellant attacked Nored with the sickle, and both men "wrestled around" for three or four minutes before Nored disarmed him. Thus, a rational jury could have reasonably concluded that (1) Nored reported a crime to the police, (2) that appellant was involved in the crime, (3) appellant saw him call the police, and (4) appellant charged at Nored, saying he was going to teach him a lesson. Thus, a rational jury could have reasonably concluded that appellant assaulted Nored with a deadly weapon in retaliation against a person who had reported the occurrence of a crime.

After viewing all of the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to prove beyond a reasonable doubt that appellant committed the offense of aggravated assault with a deadly weapon in retaliation against a person who has reported the occurrence of a crime. Issue one is overruled.

10

**B. Motion for Mistrial**

In issue two, appellant contends the trial court abused its discretion by refusing to grant a mistrial.

**1. Background**

During the guilt-innocence phase, the prosecutor, on direct-examination, asked the victim, Bill Nored, about what the woman who was inside appellant's trailer told the police after they arrived at appellant's trailer:

| | |
|---|---|
| Prosecutor: | Did you hear this woman say anything to the police officer? |
| Defense Counsel: | Your Honor, I'm going to object as to hearsay. |
| The Court: | Overruled. |
| Mr. Nored: | They took her away, it was obvious he had been beating up on her, for her safety. |
| Prosecutor: | Okay. |
| Defense Counsel: | Your Honor— |
| Prosecutor: | That's not my question. |
| Defense Counsel: | —again, I'm going to object.   It's not responsive and he's speculating, Judge.   I ask— |
| The Court: | Sustained. |
| Defense Counsel: | Can I get an instruction that the jury disregard that statement? |
| The Court: | You will have to disregard it. |
| Defense Counsel: | I ask for a mistrial, Judge. |

The trial court denied the motion for mistrial.

**2. Standard of Review**

"A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 77 (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "In effect, the trial court conducts an appellate function:   determining whether improper conduct is so harmful that the case must be redone." *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.* (citing *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003)).   To determine whether a trial court abused its discretion in denying a defendant's motion for a mistrial, we consider three factors:   (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the trial court); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).   *Archie v. State*, 221 S.W.3d 695, 699–700 (Tex. Crim. App. 2007) (citing *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004)).[2]

**a. First Factor—Severity of the Misconduct**

Prejudice is the touchstone of the first factor.   *Hawkins*, 135 S.W.3d at 77. "[P]articularly offensive or outrageous conduct generally gives rise to a natural inference of prejudice and can be considered as such, even when prejudice is not otherwise apparent from the record."   *Id.*   In this case, Nored, referring to the woman inside appellant's trailer, testified appellant "had been beating up on her . . . ."   A rational juror

---

[2] *See Cortez v. State*, No. AP-76101, 2011 WL 4088105, at *19 (Tex. Crim. App. Sept 14, 2011) (not designated for publication) (applying the *Archie* factors to analyze whether the trial court correctly denied a motion for mistrial regarding the admission of an extraneous offense through testimony of a witness).

12

could understand this comment to mean that appellant had assaulted the woman. However, any prejudicial effect of Nored's remark was minimal, because it was based on facts in the record. In addition, the State did not try to interject specific, unsupported facts about appellant or expressly accuse him of illegal activity unrelated to the facts leading up to the aggravated assault on Nored.

### b. Second Factor—Curative Measures

When defense counsel asked the trial court for "an instruction that the jury disregard that statement," the trial court complied by saying, "You will have to disregard it." We assume the jury followed the trial court's instruction to disregard. *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) (stating there is a presumption that jurors will follow instructions to disregard as well as other cautionary instructions); *see also Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (stating, "[a] grant of a motion for mistrial should be reserved for those cases in which an objection could not have prevented, and instruction to disregard could not cure, the prejudice stemming from an event at trial–i.e., where an instruction would not leave the jury in an acceptable state to continue the trial."). In this case, the severity of the misconduct was not great, and the trial court's prompt instruction to disregard the statement was sufficient to cure any error. *See Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998) (stating that references to extraneous offenses can ordinarily be cured by an instruction to disregard).

### c. Third Factor—Certainty of Conviction

The certainty of conviction was high absent the improper remark. The evidence showed that Nored called the police because appellant was "beating up" the woman in his

trailer. Soon after appellant saw Nored call the police, he attacked Nored with a sickle. When appellant charged at Nored with the sickle, he told Nored he was going to teach him a lesson. Nored hurt his knee and received a cut on his arm during the attack. Adams testified he saw appellant attack Nored with the sickle.

Under the circumstances, we conclude the trial court's decision to deny the motion for mistrial was not outside the zone of reasonable disagreement given the fact that (1) we should assume that the jury followed the trial court's instruction to disregard and (2) the certainty that appellant would have been convicted even in the absence of Nored's remark. We therefore overrule the second issue.

## C. Jury Argument

In issue three, appellant argues that "[i]n closing the state violated the prohibition of referring to the defense's silence and the fact that [the] defense did not bring in any witnesses in [his] defense, requiring reversal under Doyle."[3]

### 1. Background

During the State's rebuttal closing argument at the guilt-innocence phase, the prosecutor argued, in relevant part:

> Now, [defense counsel] is right. He has every right to bring in all of the witnesses he wishes. His client has the right not to testify, but that doesn't mean that he can't bring in evidence, that he can't bring in people—
>
> Defense Counsel:   Your Honor —
>
> Prosecutor:              —to testify.
>
> Defense Counsel:   —I'm going to object. [The prosecutor] knows exactly that the burden is never on the defense.

---

[3] *See Doyle v. Ohio*, 426 U.S. 610 (1976), which states that the federal constitution's guarantee of due process prohibits comment on a post-arrest silence after *Miranda* warnings are given.

| | |
|---|---|
| The Court: | The burden is never on the defense to bring any witnesses. |
| Defense Counsel: | Your Honor— |
| The Court: | It's always on the State. |
| Defense Counsel: | —I move for a mistrial. |

After the trial court denied the motion for mistrial, the prosecutor continued his closing argument: "If I'm in a bar and there is some sort of a fight in a bar and the State brings in three people that testify about what took place in that bar, the defense can bring in as many witnesses as they want." At that point, defense counsel objected:

| | |
|---|---|
| Defense Counsel: | This is the second time— |
| Prosecutor: | No, no. Counsel is wrong, Judge. He has every right to bring as many witnesses as he wishes to come in. The burden is on me. There is no question about that. But he has—he has a right to bring in witnesses, and he can bring in witnesses. |
| Defense Counsel: | Judge— |
| The Prosecutor: | He's misleading this court and this jury. |
| The Court: | Okay. Both of you please stop, okay? |
| Defense Counsel: | Judge— |
| The Court: | Both of you please stop. |
| Defense Counsel: | If I could make my objection. |
| The Court: | Wait. Hold on, [defense counsel]. I'm going to rule in your favor. Just hold on.<br><br>Ladies and gentlemen, the defense does not have to bring any witnesses, whatsoever. It is up to the State to prove the allegations. |

15

Defense Counsel:   Your Honor, to the extent that this is the second time [the prosecutor] has done that, I move for a mistrial, Judge.   He's done it twice.

The trial court denied the motion for mistrial.

**2. Analysis**

We note that on appeal, appellant does not complain of the trial court's failure to grant a mistrial.   Rather, he argues the State "violated the prohibition of referring to the defense's silence and the fact that [the] defense did not bring in any witnesses in [appellant's] defense[.]"

Defense counsel did not object that the prosecutor violated the prohibition against referring to the "defense's silence."   Accordingly, that part of appellant's complaint is not preserved for our review.   *See* TEX. R. APP. P. 33.1.   Nevertheless, the court of criminal appeals has "held that the prosecutor may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify."   *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) (citing *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995); *Livingston v. State*, 789 S.W.2d 311, 338 (Tex. Crim. App. 1987)).   Here, the prosecutor's complained-of comments did not fault appellant for not testifying and did not amount to a prohibited reference to appellant's failure to testify.   Thus, the prosecutor's references to the defense's failure to produce witnesses or evidence was not improper particularly in light of the trial court's instructions to the jury regarding the relevant burden of proof.   Appellant's third issue is overruled.

16

**D. Charge Error**

In issues four and five, appellant complains about two specific aspects of the guilt-innocence charge. When reviewing allegations of charge error, an appellate court must first determine whether error actually exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If the appellate court finds error, then it determines whether the error caused sufficient harm to require reversal. *Id.*

**1. Lesser-Included-Offense Instruction on Misdemeanor Assault**

In issue four, appellant contends the trial court erred by denying his request for a lesser-included-offense instruction on misdemeanor assault. *See* TEX. PENAL CODE ANN. § 22.01 (misdemeanor assault). "Determining whether a defendant is entitled to a lesser-included-offense instruction requires a two-part analysis." *Goad v. State*, No. PD-0435-11, 2011 WL 5375119, at *2 (Tex. Crim. App. Nov. 9, 2011) (citing *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007)). "We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense." *Id.* (citing *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535). "If so, we must decide whether the admitted evidence supports the instruction." *Id.* (citing *Rice*, 333 S.W.3d at 144). "Assault is a lesser included offense of aggravated assault." *Barnett v. State*, 344 S.W.3d 6, 15 (Tex. App.—Texarkana 2011, pet. ref'd); *see Starks v. State*, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

"The evidence supports an instruction on a lesser-included offense if it permits a rational jury to find the defendant guilty only of the lesser-included offense." *Goad*, 2011

WL 5375119, at *2 (citing *Rice*, 333 S.W.3d at 145). "'[T]here must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.'" *Id.* (quoting *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003)). "We consider all of the evidence admitted at trial, not just the evidence presented by the defendant." *Id.* (citing *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)). "The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense." *Id.* (citing *Rice*, 333 S.W.3d at 145). "'Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge.'" *Id.* (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). "However, we may not consider '[t]he credibility of the evidence and whether it conflicts with other evidence or is controverted.'" *Id.* (quoting *Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994)).

There is no evidence in the record that would permit a jury rationally to find that appellant was guilty only of misdemeanor assault. The evidence at trial contains no affirmative evidence to rebut the aggravated-assault charge. Rather, the evidence showed appellant attacked Nored with a deadly weapon; i.e., a sickle, which cut Nored's arm. Appellant told Nored he was going to kill him and teach him a lesson, and Nored hurt his knee during the attack. Appellant has not demonstrated that there is any evidence in the record that, if he is guilty, he is guilty of only misdemeanor assault and not aggravated assault by use of a deadly weapon. We conclude appellant was not entitled to a lesser-included-offense instruction on misdemeanor assault. Thus, we hold appellant has not offered more than a scintilla of evidence in favor of the requested

18

instruction, and therefore was not entitled to a lesser charge of misdemeanor assault. Issue four is overruled.

### 2. Self-Defense Instruction

In issue five, appellant contends the trial court erred in denying his request for a charge on self-defense. "If a defense is supported by the evidence, then the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible." *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007); *see* TEX. PENAL CODE ANN. § 2.03(c) (West 2011). However, "the evidence must be such that it will support a rational jury finding as to each element of the defense." *Shaw*, 243 S.W.3d at 658. "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw*, 243 S.W.3d at 657–58. We view the evidence in the light most favorable to the accused. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Shaw*, 243 S.W.3d at 658.

As applied in this case, appellant would be justified in making a threat of deadly force against Nored:   (1) if appellant was justified in using force under section 9.31 of the Texas Penal Code;[4] and (2) when and to the degree appellant reasonably believed deadly force was immediately necessary to protect himself against Nored's use or

_____

[4] Section 9.31(b) provides a list of exceptions for when the use of force against another is not justified.   *See* TEX. PENAL CODE ANN. § 9.31(b) (West Supp. 2010).

19

attempted use of unlawful deadly force.   *See* TEX. PENAL CODE ANN. § 9.32(a) (West Supp. 2010); *see also* TEX. PENAL CODE ANN. § 9.04 (West 2003) (stating "[t]he threat of force is justified when the use of force is justified by this chapter.").   "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor."   TEX. PENAL CODE ANN. § 1.07(a)(42) (West Supp. 2010).

A 2007 amendment to section 9.32 of the Texas Penal Code repealed the previously required element that "a reasonable person in the actor's situation would not have retreated."   Act of March 20, 2007, 80th Leg., R.S., ch. 1, § 3, 2007 Tex. Gen. Laws 1; *see also Morales v. State*, No. PD-1155-10, 2011 WL 5375133, at *2–3 (Tex. Crim. App. Nov. 9, 2011).   The statute now provides:

> (c) A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

> (d) For purposes of Subsection (a)(2), in determining whether an actor described by Subsection (c) reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.

TEX. PENAL CODE ANN. § 9.32(c)-(d).[5]

Here, the evidence in the record shows that appellant ran to Adams's trailer, carrying a sickle.   Appellant told Nored he was going to teach him a lesson, and Nored told appellant that if he came any closer he was going to hit him with the extension pole. He ignored Nored's warning and attacked him.   Nored, in order to defend himself, struck

---

[5] Subsection (a)(2) requires that the person using deadly force must reasonably believe that deadly force is immediately necessary.   TEX. PENAL CODE ANN. § 9.32(a)(2).

appellant with the extension pole.   Both men "wrestled around" for three or four minutes, and when Nored took the sickle from appellant's hand, he let appellant go.   Thus, appellant threatened Nored with deadly force at a time when he was under no threat of violence from Nored.   No reasonable person would have believed that deadly force was immediately necessary to protect himself from Nored at the time appellant ran to Adams's trailer, carrying the sickle.   *See Bray v. State*, 634 S.W.2d 370, 371–73 (Tex. App.—Dallas 1982, no pet.) (stating defendant was not entitled to self-defense charge in part because the complainant did not threaten deadly force).   The fifth issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.


                                                    ROSE VELA
                                                    Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of January, 2012.

21